**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELANIE KILGORE,** | : | **Civil No. 1:20-CV-1613** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | **(Magistrate Judge Carlson)** |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM OPINION**

I.    **Factual and Procedural Background**

Social Security appeals are judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon Administrative Law Judges (ALJs) in order to facilitate this review. At a minimum, this articulation responsibility means that the ALJ's decision must provide a logical nexus between any factual findings and ultimate functional capacity and disability determinations. One aspect of this duty of articulation entails ensuring that there is a legal and logical consistency between the ALJ's determination of a claimant's residual functional

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

capacity and the testimony of the Vocational Expert concerning whether there are jobs in the national economy that the claimant can perform.

This principle applies with particular force to cases involving claimants who have a medical need for a cane or other assistive device. Because the use of a cane to ambulate may significantly undermine the ability to work, courts have held that where a claimant has been deemed by a physician to medically require a cane, and a vocational expert has opined that use of the cane could render the claimant unemployable, the ALJ must make specific, well-articulated findings in order to deny the claim for benefits. Failure to fully address this issue may compel a remand of the case for further consideration by the Commissioner.

So it is here.

The plaintiff, Melanie Kilgore, is a woman in her 40's who suffers from chronic regional pain syndrome, left foot drop, neuropathy, and osteopenia as a result of a severe left ankle fracture she suffered in 2014. These injuries were deemed so severe and disabling that Kilgore received disability benefits for a closed period of time between 2014 and 2015 as a result of her impairments. (Tr. 93-104). In August of 2018, Kilgore submitted a renewed application for disability benefits, alleging an onset of disability in June of 2017 as a result of the exacerbation of these conditions. (Tr. 16).

Three medical sources opined regarding the severity of Kilgore's impairments. A treating source, Dr. Phillipe Chemaly, stated that the conditions were totally disabling. (Tr. 380-82). An examining consulting physician, Dr. Marielle Strone, concluded that Kilgore's leg impairments were severe and severely limiting, but indicated that she might be able to perform a very limited range of sedentary work. (Tr. 313-26). A nontreating and nonexamining source, Dr. Ruth Arnold, concluded that Kilgore could perform light work notwithstanding her significant left leg impairments. (Tr. 105-17).

While these physicians reached differing conclusions regarding the degree of Kilgore's impairment, there was a clear consensus among the doctors who actually treated or examined Kilgore that she required a cane to ambulate. Dr. Chemaly explicitly stated that a cane was medically necessary for Kilgore when standing and walking. (Tr. 380). Dr. Stone reached the same conclusion, albeit in slightly different terms, stating that Kilgore "does not use a cane but in my medical opinion she needs one." (Tr. 318). Given this medical consensus that Kilgore needed a cane to stand or walk, in fashioning a residual functional capacity (RFC) for Kilgore the ALJ concluded that "[s]he would require a cane to ambulate." (Tr. 22).

It is against the backdrop of this evidence that an ALJ conducted a hearing concerning Kilgore' disability application on September 24, 2019. (Tr. 34-62). During this hearing, Kilgore and a Vocational Expert both testified. (Id.) In the course of her testimony, Kilgore reaffirmed her constant need to use a cane to stand and walk. (Tr. 42-43). Kilgore also confirmed that she was right hand dominant and used the cane with her right hand when standing and walking. (Tr. 59).

A Vocational Expert also testified, describing jobs that a person with Kilgore's impairments might be able to perform. (Tr. 53-61). In the course of this testimony, the Vocational Expert was presented with a series of hypothetical questions regarding a worker with impairments similar to those experienced by Kilgore, including a hypothetical which closely matched the RFC ultimately adopted by the ALJ in this decision. (Id.) In response, the Vocational Expert initially identified three jobs that she testified Kilgore could perform—order clerk, receptionist, and account clerk.[2] However, as the ALJ's hypothetical questions entailed greater restrictions and incorporated the need for a cane, the Vocational Expert's testimony became mired in some confusion and riddled with contradictions.

---

[2] 209.567-014 Order Clerk, Food and Beverage, DICOT 209.567-014; 237.367-046 Telephone Quotation Clerk, DICOT 237.367-046; 205.367-014 Charge-account Clerk, DICOT 205.367-014.

4

Thus, when the ALJ inquired about the employability of a hypothetical worker who was limited to sedentary work, could only walk for 90 minutes in an 8 hour day, required a cane to ambulate, needed a sit/stand option at work, and could only stand for 15 minutes and walk for 5 minutes at a time, the Vocational Expert expressed some confusion and sought clarification from the ALJ regarding these limitations. (Tr. 56-57). The Vocational Expert then initially testified that even with these restrictions, the three jobs she had previously identified would remain available. (Tr. 57).

However, the Vocational Expert then almost immediately contradicted this testimony when, on cross examination, she was asked to focus on a specific aspect of the hypothetical—Kilgore's need to frequently sit or stand and walk—and was directed to consider the necessity of Kilgore's use of her dominant hand to hold a cane when standing and walking. With the Vocational Expert's attention focused on these work-related factors, the following exchange took place:

Q.   [A]ll of these jobs require bilateral manual dexterity. Is that correct?

A.   Correct.

Q.   So those jobs would be eliminated by the change in the hypothetical [focusing on cane usage when standing and walking]?

A.   Correct.

5

(Tr. 60).

Therefore, in the course of her testimony the Vocational Expert seemingly asserted mutually inconsistent propositions and appeared to testify that Kilgore's use of a cane both would and would not allow her to perform these jobs. Following this hearing, on October 30, 2019, the ALJ issued a decision denying Kilgore's application for benefits. (Doc. 13-31). In that decision, the ALJ first concluded that Kilgore met the insured requirements of the Act through December of 2022. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kilgore's chronic regional pain syndrome, left foot drop, neuropathy, and osteopenia as a result of a severe left ankle fracture she suffered in 2014 were all severe impairments. (Tr. 19). At Step 3, the ALJ determined that Kilgore did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 21-22).

The ALJ then fashioned a somewhat enigmatic residual functional capacity assessment for Kilgore, which restricted her to:

> [S]edentary work . . . except walking limited to 90 minutes in an 8-hour workday. She would require a cane to ambulate and sit/stand option, while standing every 15 minutes and walking every 5 minutes.[3]

---

[3] We characterize this RFC as somewhat enigmatic because the reference to a sit/stand option, while standing every 15 minutes and walking every 5 minutes, suggests that the ALJ expected Kilgore to be frequently standing or walking to

(Tr. 22).

Thus, the ALJ seemed to have fashioned an RFC for Kilgore which contemplated a sit/stand option with frequent shifts of position and brief periods of standing or walking throughout the workday. Having arrived at this RFC for Kilgore, the ALJ found that Kilgore could not perform her past work but could engage in other work in the national economy. (Tr. 27-29). On this score, the ALJ specifically found that Kilgore could perform the three jobs identified by the Vocational Expert in her testimony, order clerk, receptionist, and account clerk. (Tr. 29). The ALJ also stated that "[i]n those areas where the Dictionary of Occupational Titles did not provide direct application, including the sit/stand option, . . .and the use of the cane, the undersigned finds the vocational expert's explanations to be credible . . . ." (Id.)

What was left unexplained by the ALJ was the question of *which* of the Vocational Expert's contradictory explanations were found to be credible—her initial assertion that Kilgore could perform these jobs, or her later testimony that due to the bilateral manual dexterity requirements of the jobs, frequent use of a cane would render Kilgore unemployable. Nonetheless with this contradiction

---

relieve her chronic pain although the ALJ does not expressly state this in the decision.

unacknowledged and unexplained, the ALJ denied Kilgore's application for benefits. (Tr. 29-30).

This appeal followed. (Doc. 1). On appeal, Kilgore's raises a number of challenges to the ALJ's decision, and specifically argues that the ALJ failed to adequately address these contradictions in the Vocational Expert's testimony when fashioning the RFC in this case and concluding that Kilgore could perform specific jobs which required bilateral manual dexterity despite her frequent use of her dominant hand to hold a medically necessary cane. On these facts, as discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal, and therefore this case will be remanded for further consideration and evaluation of the medical evidence and Vocational Expert testimony relating to Kilgore's use of a cane to ambulate.

## II.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the

9

agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

10

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).   In  making  this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub

nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d

14

at 778–79 (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when

15

no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in

16

his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C. Duty of Articulation, Claimant's Use of a Cane

Cases considering a claimant's use of a cane to ambulate aptly illustrate the importance of the ALJ's duty to clearly articulate the rationale for a decision denying disability benefits. Case law and Social Security regulations both recognize that a claimant's need to use a cane or assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal. At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the cane or assistive device must be medically necessary.

> " 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]' Social Security Ruling 96–9p." Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002). In short
>
>> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an

> ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor. See, Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002).

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014).

Phillips v. Colvin, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), report and recommendation adopted sub nom. Philips v. Colvin, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of a cane." Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. Likewise, when the evidence indicates that the use of a cane is medically required and a vocational expert testifies that the plaintiff's use of a cane would render him unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony, and the case should be remanded. Altomare v. Barnhart, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005). In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane, and a vocational expert testified that such cane use significantly erodes the employment base for a claimant, the failure to address these issues constitutes a failure of

18

articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at \*5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at \*7 (W.D. Pa. Apr. 13, 2012).

Likewise, as a general rule it is well settled that a remand to the Commissioner is appropriate when the administrative record discloses an unresolved conflict between a vocational expert's testimony, an ALJ's findings, and the provisions of the Dictionary of Occupational Titles, the reference work which the expert relies upon when rendering an opinion. See Minichino v. Colvin, 955 F. Supp. 2d 366, 380 (M.D. Pa. 2013). Therefore, when there is a material inconsistency between the vocational expert testimony, the DOT, and the ALJ's decision which is unexplained and unacknowledged by either the expert or the ALJ, remand is often appropriate. Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003). Similarly, a remand is necessary if there are material ambiguities in the Vocational Expert's testimony that are not adequately addressed and resolved by the ALJ. Smith v. Astrue, 961 F. Supp. 2d 620, 658 (D. Del. 2013); Williams v. Barnhart, 424 F. Supp. 2d 796, 802 (E.D. Pa. 2006).

It is against these benchmarks that we assess the instant case.

C.     __This Case Will Be Remanded.__

In this case, we believe that there is an inherent confusion and contradiction in the testimony of the Vocational Expert regarding whether Kilgore—who must use a cane to stand and walk—can perform jobs requiring bilateral manual dexterity if she also needs to use the cane, and her dominant right hand, to frequently shift from sitting to standing and walking. This confusion and ambiguity stems from the fact that in the course of her testimony, the Vocational Expert appears to have initially testified that Kilgore could perform certain specific jobs, but later when the expert's attention was focused on how the cane use would necessarily deny Kilgore bilateral manual dexterity, she recanted this testimony and indicated that Kilgore could not perform the jobs relied upon by the ALJ in this decision denying benefits to the plaintiff.

This ambiguity and contradiction is unacknowledged and unaddressed in the ALJ's decision, which does not appear to recognize that contradictory nature of the Vocational Expert's testimony. Instead,  the ALJ simply stated that "[i]n those areas where the Dictionary of Occupational Titles did not provide direct application, including the sit/stand option, . . .and the use of the cane, the undersigned finds the vocational expert's explanations to be credible . . . ," (Tr. 29), without explaining which of the Vocational Expert's contradictory explanations were found to be

credible. Thus, we are presented with an administrative record that discloses an unresolved conflict between a vocational expert's testimony and the ALJ's findings, which is unexplained and unacknowledged by either the expert or the ALJ. Boone, 353 F.3d at 209; Minichino, 955 F.Supp.2d at 380. Further, in this case there are material ambiguities in the Vocational Expert's testimony that are not adequately addressed and resolved by the ALJ. Smith, 961 F.Supp.2d at 658; Williams, 424 F.Supp.2d at 802. These factors strongly suggest the need for further consideration and clarification regarding how frequent cane use may erode Kilgore's employment prospects.

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here. On the current record, where the Vocational Expert testified in a contradictory fashion and that contradiction was not acknowledged, addressed, and resolved by the ALJ, the ALJ's burden of articulation is not met. Therefore, this matter will be remanded for further consideration by the Commissioner.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome

of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## III.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration by the Commissioner.

An appropriate order follows.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: December 3, 2021